# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **BESSIE WRIGHT** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **4:18-cv-136** |
| **SECURUS TECHNOLOGIES,** | § | |
| **INC.** | § | |
| *Defendant.* | § | |
| | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Securus Technologies subjected Bessie Wright, an African-American employee, to extreme racial harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Ku Klux Klan Act, 42 U.S.C. § 1981.

Brock Fischer, an Anglo Securus employee, repeatedly used the word "nigger" in the presence of and in the course of dealing with Ms. Wright. When Ms. Wright complained to human resources, Securus did nothing.

Mr. Fischer then placed monkey statues all over Ms. Wright's book-shelf, stuffed monkeys all over her office, and a large voodoo-like monkey in her office chair. Mr. Fischer's vile action references hateful stereotypes that African-Americans are subhuman. Again Ms. Wright complained. Again, Securus did nothing.

Then, another Securus employee displayed a Confederate flag in the customer service department. Securus employees complained about the display. Securus did nothing.

Securus's hostile work environment and sanctioning of extreme discrimination took a physical and emotional toll on Ms. Wright. Because of Securus's discrimination and harassment, Ms. Wright suffered PTSD, a stroke, and a major heart attack.

Ms. Wright seeks damages at the maximum rate allowed by law, and in support respectfully shows the following:

**I.**
**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Bessie Wright, is an individual who resides in Collin County, Texas.

2. Securus Technologies, Inc., ("Securus") is a Delaware Limited Liability Company with its principal place of business in Carrollton, Texas. Defendant may be served through its registered agent for service of process in Texas, CT Corporation, at its registered address, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

3. Personal jurisdiction over Defendant is appropriate because at all times relevant to Plaintiff's claims, Defendant was doing business in the State of Texas as defined by the Texas Long Arm Statute, contained in Section 17.042 of the Texas Civil Practice and Remedies Code, by recruiting Texas residents for employment inside the State of Texas through its various locations throughout the State of Texas, including Defendant's location where Ms. Wright was employed. Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

4. Under both Title VII and Section 1981, venue and jurisdiction are proper in this District and Division because the acts giving rise to this case occurred in Carrollton, Texas.

## II.
## FACTUAL BACKGROUND

5. Bessie Wright first began working for Securus on November 24, 2014, as the Manager of Customer Training and Product Adoption.

6. Unfortunately, once Ms. Wright began working for Securus, she realized that the Company was infected with serious racial disparities.

7. Ms. Wright discovered that Securus was accepting of overt racism against African-Americans and people of minority race.

8. Ms. Wright is African-American.

9. Securus fosters a culture where Anglo employees are free to make openly racial remarks.

10. Indeed, two Securus employees, Nichele Montgomere and Amber J. Banks, said that, "while working for Securus [they] witnessed the Company and many of its employees harass and discriminate against its minority employees, specifically, Bessie Wright."

11. By way of example, on April 5, 2015, while speaking to Ms. Montgomere, another Securus employee, Brock Fischer, walked into Ms. Wright's office and began explaining what he heard while listening to an inmate's phone call recording. During his explanation, Mr. Fischer proudly used the word "nigger" several times.

12. Mr. Fischer is Anglo.

13. Ms. Wright asked Mr. Fischer to refrain from using such a derogatory term.

14. Mr. Fischer ignored Ms. Wright and used the word "nigger" again.

15. Then, Ms. Montgomere asked Mr. Fischer to stop using the n word.

16. Ms. Montgomere is African-American.

17. Mr. Fischer also ignored Ms. Montgomere.

18. In a sworn affidavit, Ms. Montgomere described the events of April 5, 2015 as follows:

On April 5, 2015, while Bessie and I were in her office, Brock Fischer, a trainer for Securus, came into Bessie's office and began reciting what he heard while listening to an inmate's phone call recording. During his recitation, Mr. Fischer used the "n" word several times. Bessie asked Mr. Fischer to refrain from using the "n" word as it was derogatory. Mr. Fischer ignored Bessie and continued to use the "n" word casually. Then, I asked Mr. Fischer to stop using the "n" word, because it is a highly offensive and a derogatory term. Mr. Fischer also ignored my request.

19. Ms. Wright complained to Securus's human resources department about Mr. Fischer's use of the n word.

20. Securus did nothing.

21. Then, on June 19, 2015, Mr. Fischer asked another Securus employee, Nikko Williams, to let him into Ms. Wright's office while Ms. Wright was not present.

22. Consequently, Mr. Fischer placed statues of monkeys on Ms. Wright's bookshelf, placed plush monkeys throughout her office, and placed one large voodoo-like monkey in her chair, implying that African-Americans resemble apes.



23. At that point, Ms. Wright did what any employee in her position would do, she complained to Robbin Schmitt, a human resources employee; Kate Lengyel, the vice president of human resources; and Matthew Smith, the product manager and son of Securus's CEO.

24. In her complaint, Ms. Wright requested that Mr. Fischer be terminated.

25. Unsurprisingly, Securus refused to terminate Mr. Fischer.

26. In fact, Ms. Schmitt and Mr. Smith both stated that Mr. Fischer's actions did not warrant his termination.

27. On July 10, 2015, Ms. Wright took matters into her own hands and executed a formal write-up against Mr. Fischer, which required a meeting between Mr. Fischer, Ms. Wright, and Debbie Pattie, a human resources representative.

28. During that meeting, Mr. Fischer grew irate, slamming the door to the point that the windows shook.

29.  Again, Ms. Wright asked that Mr. Fischer be terminated.

30. Securus and Mr. Fischer then entered into a transaction, the gist of which is that Securus accepted a resignation from Mr. Fischer and paid him $24,000 in severance.

31. In further retaliation to Ms. Wright, Securus took the $24,000 from her budget making it more difficult for her to do her job and hit her benchmarks.

32. On information and belief, Ms. Wright's safety was in actual danger at this point.  By way of example, Securus had private security officers escort Ms. Wright for two weeks.

33. Despite Mr. Fischer's resignation, Securus's harassment and discrimination against Ms. Wright continued unabated.

34. The CEO's son, a manager, and others demeaned and harassed Ms. Wright in front of her colleagues.

35. In a sworn affidavit, Ms. Montgomere testified to the following instance in which she witnessed Ms. Wright be bullied and humiliated:

> Matt Smith was passing out seat assignments. When Bessie got up to grab the paper from Mr. Smith, Mr. Smith balled-up the paper and threw it away saying, "YOU DON'T NEED THIS!" Bessie was constantly demeaned and humiliated in front of her colleagues at Securus.

36. In another sworn affidavit, Ms. Banks testified to the following instance in which she witnessed Ms. Wright be bullied and humiliated:

> On November 14, 2017, during one of Securus' regular department meetings, Joseph Higgs asked all of the managers and leaders to stand for recognition. Bessie Wright, one of the managers in the marketing department, stood along with the other managers and leaders. In response, Mr. Higgs sarcastically said, "Bessie, you're not in management, are you?" Everyone in the room looked at him

in shock. Everyone at Securus knew that Bessie was a manager, including Mr. Higgs. It was evident that Bessie was humiliated by Mr. Higgs' statement and reluctantly replied, "Yes, I am." I was petrified to witness such harassing and discriminatory behavior.

37. Ms. Wright was the only African-American employee who held a manager position in the marketing department.

38. Ms. Wright was the only manager not allowed to report directly to the vice president of Securus, Russell Roberts.

39. Ms. Wright was repeatedly passed up for awards and promotions that were given to far less qualified and tenured Anglo employees.

40. Ms. Wright was purposely left out of strategy meetings and excluded from leadership committees, while similarly situated Anglo employees were not.

41. On information and belief, Ms. Wright was compensated much less than similarly situated Anglo employees: Mark Southerland, Kathryn Goldberg and Randy Johnson.

42. On information and belief, Ms. Wright received lower bonuses than any other similarly situated Anglo employee.

43. Ms. Wright made several requests for equal pay.

44. Securus ignored her requests.

45. Securus's racial discrimination only worsened when another Securus employee proudly displayed the Confederate flag for all Securus employees to see, including Ms. Wright.

46. Many employees complained to human resources about such a display.

47. However, Securus did nothing. Securus stated that the display of the Confederate flag is protected speech, an incorrect statement of the law regarding a private workplace.

48. Securus's blatant discrimination and harassment caused Ms. Wright elevated stress levels, anxiety and depression, forcing her to seek outside counseling.

49. Then, on February 28, 2017, while in an impromptu meeting with Mr. Smith, Ms. Wright began experiencing chest pains.

50. As a result, Ms. Wright was admitted to Baylor Heart Hospital where she underwent emergency heart surgery.

51. Securus's constant harassment and discrimination against Ms. Wright caused Ms. Wright to suffer from a major heart attack, stroke and PTSD, forcing her into long-term disability.

52. All conditions precedent to the bringing of this suit have been satisfied or fulfilled.

**III.**
**RACE DISCRIMINATION IN VIOLATION OF**
**42 U.S.C. § 1981 ET SEQ., THE KU KLUX KLAN ACT**

53. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

54. As described above, Defendant's actions constitute unlawful discrimination on the basis of Plaintiff's race in violation of 42 U.S.C. § 1981.

55. The employment practices complained of above were intentional.

56. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Section 1981.

57. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

58. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff therefore seeks punitive damages.

59. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

60. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 1981.

**IV.**
**RACE DISCRIMINATION IN VIOLATION OF**
**42 U.S.C. § 2000e ET SEQ., TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

61. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

62. As described above, Defendant's actions constitute unlawful discrimination on the basis of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964.

63. The employment practices complained of above were intentional.

64. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

65. Plaintiff timely filed a complaint of discrimination with the United States Equal Employment Opportunity Commission and received a notice of right to sue. Plaintiff has filed this suit within 90 days of receipt of this notice.

66. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

67. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff therefore seeks punitive damages.

68. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

69. Defendant's actions referenced above have caused Plaintiff to retain the services of the

undersigned counsel in order to pursue her federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit.

**V.**
**RETALIATION IN VIOLATION OF**
**42 U.S.C. § 1981 ET SEQ., THE KU KLUX KLAN ACT**

70. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

71. As described above, Defendant's actions constitute unlawful retaliation because of Plaintiff's protected activity, including complaining of race discrimination and race-based harassment in the workplace, in violation of 42 U.S.C. § 1981.

72. Defendant's actions have created a hostile work environment for Plaintiff. The employment practices complained of above were intentional.

73. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Section 1981.

74. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff therefore seeks punitive damages under 42 U.S.C. §§ 1981 and 1981a.

75. As a result of Defendant's retaliation, Plaintiff has suffered non-pecuniary losses including, but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

76. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful retaliation.

77. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her federal rights in this action. Consequently,

Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 1981.

**IV.**
**RETALIATION VIOLATION OF**
**42 U.S.C. § 2000e ET SEQ., TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

78. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

79. As described above, Defendant's actions constitute unlawful retaliation because of Plaintiff's protected activity, including complaining of race discrimination and race-based harassment in the workplace, in violation of Title VII of the Civil Rights Act of 1964.

80. The employment practices complained of above were intentional.

81. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

82. Plaintiff timely filed a complaint of discrimination with the United States Equal Employment Opportunity Commission and received a notice of right to sue. Plaintiff has filed this suit within 90 days of receipt of this notice.

83. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

84. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff therefore seeks punitive damages.

85. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

86. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her federal rights in this action. Consequently,

Plaintiff seeks attorneys' fees, expert costs, and other costs of suit.

## V.  **JURY DEMAND**

87. Plaintiff hereby makes a demand for a trial by jury on all issues, claims and defenses in this action.

## VI.  **PRAYER**

88. WHEREFORE, Plaintiff respectfully requests that the above-named Defendant be cited to appear in this matter and that, after jury trial by proof, she be awarded:

    i.    Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    ii.    Actual damages;

    iii.    Punitive damages;

    iv.    Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit; and

    v.    Prejudgment and post-judgment interest as allowed by law;

    vi.    Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled.

Respectfully submitted,

Date: <u>March 1, 2018</u>

By: */s/ Evan B. Lange*
Evan B. Lange (Lead Counsel)
State Bar No. 24089021
ELange@Robwiley.com

Robert J. Wiley
Texas Bar No. 24013750
Rwiley@robwiley.com
*Board Certified Specialist, Texas Board of Legal*
*Specialization, Labor and Employment Law*

LAW OFFICE OF ROB WILEY, P.C.
2613 Thomas Ave., Dallas, TX 75204
Phone: (214) 528-6500
Fax: (214) 528-6511
ATTORNEYS FOR PLAINTIFF